And we'll move to our second case this morning, Meadows v. NCR Corporation. Mr. Hughes Good morning. Thank you, Your Honor, and may it please the Court, Paul Hughes for me to begin with the second argument in our brief, which is the time recording issue. This raises the question, when an employer voluntarily elects to pay for incidental time an employee properly records, does the employer then obligate itself to pay for incidental time employees do not record? We think the answer to that question is no. This flows from the statutory text and the purpose of the statute. And if we were to agree with you on this issue, the whole thing gets reversed, am I right? Yes, Your Honor. If the Court agrees on this one issue, I think that would result in reversal of the District Court's decision and the other issues raised in the case would not need to be addressed if the Court agrees, which is in part why I wanted to start with this issue,  Mr. Hughes, can I ask you a question regarding this? I'm also very interested in this issue. Can you point to where in the jury instructions the jury was told what to do with evidence? I'm just going to give you the following hypothetical evidence. In order to be paid, an employee had to record their time. But if NCR discouraged the employee from recording their overtime work, where in the jury instructions was the jury told what to do in that situation? I'm sorry, the situation, Your Honor, being if there's a discouragement for recording all the evidence, I think when I went back and reviewed the transcript, it seemed to me like almost all the witnesses testified that NCR would pay for overtime work if it was recorded. And it seemed to me that the evidence was NCR wouldn't quibble about whether it was compensable or not. They couldn't do that. They just paid it, right? But they required it to be recorded. Mr. Meadows didn't record it. There's no question about that. But Mr. Meadows seems to suggest, and I think he testified, that he was discouraged from recording the time. So let me touch on that, Your Honor, in a few different ways. So first about that argument outside Allen. And I'll answer the court's question directly in a moment. But that's been waived, by the way, below. That was not an argument that was advanced in response to the Rule 59 motion. So I don't think that's one that's properly before the court. But directing right to the substance of that, my colleagues point to transcript page 79. I think it's lines 18 to 20 of the trial transcript. And when you look at that testimony, it does not say that he was directed not to record time. What he said is, and this is the quote at, again, trial transcript page 79, line 20, you could enter it, but they just wouldn't approve it. That is the quote. That's the piece of testimony that my friends point to when they say he was discouraged. This was not them saying, work the time, but don't record it. It said, he said this one line, you could enter it, but they just wouldn't approve it. But there are two problems with that. Not only does it not say that he was discouraged, first, he later, on trial transcript 85 at lines 5 to 9, contradicted himself and admitted that if he recorded the time, he was paid for it. But the second problem is this theory that they've raised on appeal, it's actually fatal to their underlying theory of the case. Because again, the backdrop here is this incidental time that's at issue, there's not a legal obligation to pay for it by the nature of the acts. This is what the trial court found in its summary judgment decision at supplemental appendix pages 12 to 15. Because these are post-luminary incidental activities, it's not something that the FLSA necessarily obligates an employer to pay. It only obligates an employer to pay in this context if there is a custom or practice of doing so. And if Mr. Meadows' argument is that he wasn't paid for this time, that there was no policy or practice if he recorded it, that would undermine one of the central tenets on which he needs to prevail, in which I think the trial court at appendix page 11 found there was evidence in the record to find that if he recorded the time, he would be paid for it. Because again, if he hadn't shown that, if that wasn't the policy, we wouldn't be here because this time wouldn't be compensable at all. So I don't think that argument where he suggests that we're within the Allen language of discouragement works for at least two reasons. The testimony just isn't there, what he's suggesting it is. But even if it were, that would undermine his central theory of the case. He had to prevail on the notion that if time is recorded, it would be paid. And so that, I think, brings us back to a very important construction of section 254B, the Portal Act, which is when an employer and an employee are adopting customs or practices, these are again elective for paying for incidental time that is not necessarily compensable, what are the limitations to which an employer can put around it? And there's, I think, decades of authority that addresses one kind of limitation, and that's the temporal limitation. And this is cases going back to Galvin in the Southern District of New York back in 1949, much more recently in Texas, treatises look at this. And they say if an employee elects to pay for time that it's not obligated to, for example, putting on certain clothing or some other incidental activity, but they say, we're going to pay for 15 minutes of this activity, so they will pay for that activity. Well, if an employee legitimately takes 30 minutes to do that activity, the employer can rest on its limitation and say, our custom or practice, because it's elective, is to pay for only 15 minutes of that, that they can have that limitation, that that is a proper thing to be able to do. I don't think there's any way to distinguish that kind of temporal limitation from the limitation that's at issue here, which is recording the time. And again, when you're looking at an employer like NCR that has thousands of employees like this in the field, I think it's a very reasonable limitation to say, if you would like pay for these incidental activities, record them, because that allows an employer to have awareness in real time of what an employee is doing. If the employer wants to train an employee or a manager away from those sort of activities, it can do so. It has a reasonable way of paying for this sort of time. I think that the contrary rule raises a very substantial policy problem for employers like NCR, because as I understand what Mr. Meadows would prefer is, if they elect to pay for the time that employees record, and then they have to pay for all of the time that employees don't record, as I understand it, that would obligate an employer to check the employee's phone records, to check their emails, to check their GPS logs, to have their supervisors, who generally are involved on their day-to-day fly-specking of their time cards, look at their time entries in order to top them up to try to figure out if they've done any work that they've not reported to the company in order to get payment. Now, we think, and this is the third section of our brief, that shouldn't be sufficient for knowledge, but even assuming that we're sufficient for knowledge and we were wrong about that argument under the third prong. When we're talking on incidental activities that there's not an obligation to pay, it's quite reasonable for an employer to say, we'll pay it if you timely record it so we know about it, we can pay it, and we're not in a situation where two or three years after the fact you're coming saying you owe us for substantial periods of time that were not recorded in the moment at the time that this If recording requirements are impermissible for must-pay work, they should be considered impermissible for may-pay, discretionary-pay work? And, you know, I recognize the district court found that distinction in saying that our argument between recorded and unrecorded time is impermissible, but I think that misses the context of this is, again, incidental time that the employer doesn't have to pay, so it has more flexibility. Again, if it were principal activity, the employer couldn't say we're only going to pay you 15 minutes of principal activity, but not 30 minutes if it takes that whole time, because the FLSA obligates them to pay for that entirety of the principal activity. That's the distinction we're talking about here. We're in a space that by its nature is more flexible, because an employer could say we're just not going to pay for this time at all, and they would be fully within their rights to say this incidental preliminary and post-preliminary activity we're simply categorically not paying for. The question is, when an employer decides to be more generous to its employees and say, if you put down the time, we're not going to go through and fly-spec the records, we'll pay you for that time, but it lets the company know, so if they think something's not happening to their liking, they can, in real time, check those records and train or direct different things, if that's the policy, the upshot of what the district court held in the rule that the time. And again, since we're not talking about the obligatory payment, the principal activities, in this space of incidental activities that is a voluntary election, I think we're in a circumstance where it is perfectly appropriate for an employer to have this kind of limitation, and it's truly essential for their operations, because without it, I think it's just an impossible task for employers to be out there fly-spec-ing 1,000 employees, looking at emails, looking at GPS records, looking at call logs, to try to find when they're working outside their shift and increasing the time. Was this legal issue fully litigated at the summary judgment stage, the 254 interpretation? Yes, Your Honor, and the district court found, this was between supplemental appendix 12 to 15, said this was incidental time, found that clearly, and said that would mean there's no obligation to pay, and then it considered two possible exceptions, and it came to the exception and said, well, if there is a custom or practice of paying for this time, then you would be obligated, and said there is a question of fact on that, that's what went to the court. And then when we made this argument in our Rule 59, the sole basis that the district court rejected our Rule 59 motion, this is clear on appendix page 11, was the legal holding. The court said we're wrong to say that there is a distinction between recorded and unrecorded time for purposes of this issue, and that the distinction we draw is legally irrelevant, and that's the sole reason the court rejected our argument. We think that's a legal error. We think the court, if it corrects that legal error, that is the sole thing the court would need to do to reverse and send this back to the court. I'd like to, unless the court has further questions, preserve my time. That's fine. Ms. Jenkins. May it please the court. My name is Haley Jenkins, and I represent Michael Meadows. NCR Corporation had a simple trial strategy to convince the jury that Mr. Meadows should be awarded $0 for zero overtime hours worked, but that trial strategy failed for three reasons. The jury believed that NCR encouraged Mr. Meadows to work off the clock, the jury believed that Mr. Meadows did work off the clock, and the jury decided that NCR owed Mr. Meadows for this off-the-clock work. The jury was right. Faced with the failure of its all-or-nothing trial strategy, NCR came here seeking a do-over to change calculated decisions that it made at trial, but defendants are not entitled to a second chance simply because the choices they made below backfire, and NCR is not entitled to a new trial here. First, it seeks to rewrite the Fair Labor Standards Act to create a new standard just for NCR to determine compensability of Mr. Meadows' off-the-clock work. Second, it fiercely ignores— How so? Your Honor, the text of the Fair Labor Standards Act, Section 254B, says nothing about requiring the recordation of these activities in order to be paid for them. Right, it just—I'm with you there. It says policy or custom. Correct. Here, let me get the exact language. I forget. Was it practice or custom or policy or custom? I can't remember. Custom or practice. Correct. But all of the evidence at trial, all of it, seemed to be that the custom or practice was if you work overtime and you record it, we'll pay you for it. And I think that was because the evidence at trial was that NCR has engineers living all over the country or all over the world that they don't really supervise and they don't fly-spec this compensable overtime. If it's recorded, they pay it, even if they don't have to. They do it anyway because they don't go back and fly-spec it. But if it's not recorded, they can't pay it. I think that was the custom or practice. But what the statute says, Your Honor, is that it's the contract custom or practice to pay for certain activities, and the evidence at trial was that these activities are unquestionably compensable. NCR does pay for them. The requirement that they be recorded is not found anywhere in the statute, and moreover, as this Court found in Allen... No, it's part of the employer's customer practice. Well, Your Honor, as this Court found in Allen, if the company discourages the employee from recording that time, that doesn't absolve it of liability. But there's a preliminary question about what the customer practice is, and that is pretty clearly including, in this case, a recording requirement. There's no contrary evidence that the company would pay for unrecorded preliminary and post-preliminary incidentals. The plain text of the statute in the jury instruction read at trial specified that the test was regarding activities, and the jury instruction actually listed out the specific activities. Well, right, and that's because that's how the judge construed the statute at summary judgment. Which was the correct way. Well, that's the whole question on appeal. So why is that correct? The statute specifically says that the employer doesn't have to pay for these non-compensable items. The judge determined at summary judgment that all the time here was in this non-compensable category unless it was compensable by customer practice. And then the judge restricted the legal issue to focusing on the activity in question at the expense of focus on what was the custom or practice here. And the statute specifically says that it's only compensable if, according to the employer's customer practice, the activity will be paid. And so that begs the question as to what the customer practice is. And if the customer practice requires recording, then only recorded time is compensable. We disagree. We think that the statute, that the plain text of the statute makes clear that it is, that the test is simply based on whether the activities themselves are compensable. And there was ample evidence at trial that those activities were. And the court reached a... The employer's customer practice was to pay for these activities. If recorded. We... But if the... But as this court stated in Allen, if the plaintiff, like here, was discouraged from recording that time, then they can't claim that the proper recordation would have been... Would have resulted in payment. And what's the factual support for that? Mr. Meadows testified at trial that he knew he wouldn't be paid for it. His supervisors had indicated that he wouldn't be paid for this. He testified at trial, as counsel pointed out, that if that time was recorded... He wasn't told not to record it. Correct. But he was told that his start time, I believe he testified at trial, he was told that his start time was a certain time of day, and he was not permitted to put an earlier start time. He knew that. That was the understanding impressed upon him by his superiors. He wasn't discouraged from recording the time. There's no testimony that supports that. We would argue, Your Honor, that if the plaintiff was under the impression that... Which was given to him by his superiors, that he wasn't going to be paid for this time, even if it was recorded, then he was discouraged from recording it. But he didn't testify that he was discouraged from recording it. In fact, he testified that when he did record it, he was paid. He testified that when he recorded overtime and other circumstances, such as when he was recorded for that type of overtime, when these activities were not recorded because he knew he wasn't going to be paid for them prior to his start time. But NCR failed below to preserve the objections that it's raising now. At summary judgment, as has been discussed, the trial court held that a question of fact existed regarding whether NCR had the contract customer practice to pay Mr. Meadows for these activities. And the trial court reached this conclusion by relying upon the plain and unambiguous text of Section 254B of the Fair Labor Standards Act, which requires compensation if there's a contract customer practice covering the activities. Counsel called this area flexible, but the plain text of the statute doesn't say or even imply that such a flexibility exists. But NCR now seeks to rewrite the summary judgment ruling, to which it took no steps to preserve and appeal, in a jury instruction that its own counsel drafted, to which it never objected at trial, and now claim that the jury shouldn't have returned a verdict for Mr. Meadows because the true test is whether NCR has a contract customer practice to pay for the time that has worked but not recorded. NCR claims in its brief that the trial court somehow legally erred in its ruling on NCR's motion for a new trial when it focused on these activities rather than whether or not he recorded them. But focusing on the nature of the activities is also a red herring. The trial court's summary judgment ruling, jury instruction 16, and the lower court's ruling on NCR's motion for a new trial all accurately reflect the black letter law of the Fair Labor Standards Act that NCR is trying to ignore. And NCR is trying to twist this question of fact into a question of law, whether any employer should be required to pay employees for time that's worked but not recorded. And in making this argument, NCR conveniently forgets the very nature of the claims it brought us here, off-the-clock work. As Meadows testified at trial and the jury believed, the reason he performed these activities without recording them is because NCR discouraged him from recording them. And so the plain and unambiguous text of Section 254B, which is supposed to protect workers like Mr. Meadows from employers looking out for their own bottom line, doesn't have this compensability exemption. I don't think the argument is that the statute requires recording. As a legal matter, that would fail, obviously, because it doesn't. The question is whether this customer practice exception to the non-compensability at this kind of time permits the employer to put parameters on the customer practice. In other words, what is the customer practice that the employer uses for compensating this time that the employer has agreed to pay as a matter of grace? I think the constriction of the statute is paramount. If the statute permitted employers to place restrictions or limitations on the compensability of these activities, it would say so. Well, that's the nature of having a customer practice, is that the employer is in charge. Sure. The employer can decide what the customer practice is and, in fact, does so either by conduct or rule or policy. What the statute requires is the payment for the activities, and I think the customer practice to pay for the activities is a paramount exception. That just begs the question as to what the customer practice is. Does it have conditions? If it has conditions, the employee has to comply with the conditions in order to get paid. But I don't think the statute permits employers to put these types of conditions on the payment of the activities. Why not? Because if there's the contract customer practice to make payment for the activities, it's not... That just begs the question as to what the customer practice is. But I think... If the customer practice includes a recording requirement, then it's perfectly consistent with the statutory text to enforce that recording requirement in a claim of this sort. I think that would defeat the purpose of the statute then, though, because it would allow employers to require off-the-clock work without consequences. If the employer's written policy... This is a problem in wage cases. If the employer's written policy complies with the law, but in practice their practices do not, then would they be absolved from liability? And the issue is that if they... That's for must-pay items. These are may-pay items. I don't think there's necessarily a distinction between the two. If the... The statute makes a distinction between the two. Sure, but the statute permits the... Or requires the payment, rather, if there's the contract customer practice. And the contract customer practice is to pay, not to pay under certain conditions. Provided it's recorded. We disagree. We think that the statute doesn't permit the, as I said before, the implementation of these types of restrictions. It doesn't prohibit conditions. It doesn't require conditions. It leaves it up to the employer to establish the customer practice. We think that... It's our position that the statute doesn't allow NCR to place these types of prohibition or these types of limitations on the work. Nothing in the statute prohibits it. No, but I think the plain text of the statute says that the contract customer practice is simply to pay. And I don't think... I think if the statute wanted to allow NCR to impose limitations, then it would say, subject to the employer's limitations, or something to that effect, which it does not do. NCR also claims that it cannot be liable for Mr. Meadows' unrecorded work because by virtue of it being unrecorded, NCR did not know and had no reason to know that Mr. Meadows performed the work. But the jury was tasked with determining whether NCR knew or should have known about this work, and based on Mr. Meadows' evidence of both actual and constructive knowledge, the jury concluded Mr. Meadows satisfied that aspect of his claim. That's because a lot of the work in question is work that NCR supervisors required Mr. Meadows to perform. He testified that many of his pre-shift and meal break tasks were phone calls with supervisors or the NCR control tower. It's perfectly reasonable for the jury to conclude that NCR knew or should have known that Mr. Meadows spent 20 minutes before his shift on phone calls when these phone calls were with his NCR supervisor. The jury could have found actual knowledge based on this testimony alone, but Mr. Meadows also offered other evidence of NCR's constructive knowledge regarding his off-the-clock work. At the very least, the jury heard that NCR knew about Mr. Meadows' lawsuit alleging off-the-clock work after he filed it in 2016, and Mr. Meadows continued working for NCR until 2019. But as Mr. Meadows testified at trial, its practices did not change. In making these types of arguments regarding knowledge, NCR ignores the nature of off-the-clock work again, as well as this court's admonitions in Allen v. City of Chicago that formal policies for reporting over time will not absolve an employer of liability if the employer prevents or discourages accurate time reporting in practice. And as this court acknowledged in Allen, prevention or discouragement of accurate time reporting can be overt, like outright telling workers not to record time, but it can also be subtle, like requiring workers to complete a certain number of job tasks in a given time frame, which is something Mr. Meadows testified happened at NCR. When these liability arguments fail, NCR attacks the jury's damages award and enters into a world of pure speculation, claiming it knows exactly how the jury arrived at the sum of 1,560 overtime hours, and that this figure is somehow divorced from the testimony offered at trial. Knowing that it could never meet its burden if it claimed the jury's verdict was excessive, NCR asserts that the jury made a math error, or even worse, deliberately ignored testimony to reach its damages award. But this is not a situation where there's absolutely no way to arrive at the jury's figure based on the evidence. In fact, the jury could have awarded nearly 300 additional hours, up to 1,857, and the damages award would still be supported by the evidence offered at trial. For these reasons and the reasons stated in our brief, NCR had every chance, every fair chance to convince the jury of its theory of the case, and had every fair opportunity to enter evidence that supported its claims, and it doesn't now get a second chance simply because its trial strategy failed. Plaintiff Michael Meadows respectfully requests that this court affirm the trial court's ruling on NCR's motion for a new trial. Thank you. Mr. Hughes. Thank you, Your Honor. I'd just like to start with one brief point, returning to the record, about the question as to whether or not there was any dissuading of Mr. Meadows reporting his time. And my colleague suggested that the only reporting that he was provided over time was post-ship work. I'd just like to direct the court's attention to the trial transcript at page 85. This begins at line 5. This is a cross-examination of Mr. Meadows. The question, it's a quote, my question, sir, is this. There were instances where you were actually, where you actually entered time in the system before the start of your shift, and you were paid for that time you entered, when you entered it into the system, correct? Mr. Meadows' answer is, quote, I was. So I think it's pretty clear evidence that when he, in fact, recorded pre-shift time, he was paid for it, and I think that's difficult to square with him. Mr. Hughes, I understand the argument to be a little bit different than that. Is it enough if Mr. Meadows testifies that he is discouraged from working overtime, regardless of whether the time was recorded or not? I don't think so, Your Honor. Again, I don't think an argument coming from Allen was developed below the district court. That's why the district court didn't analyze that issue. It just wasn't raised to the district court. But they won. I mean, I don't understand. They won the trial. What argument would they develop? Well, in response to NCR's Rule 59 motion, where we made this distinction between recorded and unrecorded time. But they made the argument to the jury. I mean, I don't see any issue there. They made this argument to the jury. He clearly testified that he was discouraged from working overtime, right? There's no question about that. Well, that may be, Your Honor, but I don't think being discouraged from working overtime is remotely what Allen is driving at. Allen is driving at something that's far more insidious of saying, don't record the time that you're working. You know, when an employer has a time system, but there's some sort of nefarious scheme to tell an employee, record less than what you work. I think that's the exception to which Allen is drawing. And there's no evidence in this record that would remotely support that. And certainly, again, I think the base most clear point is that the trial court's post-trial decision turned squarely and solely on the legal issue that we've been discussing today. If the court agrees that that was an error, I think it's quite simple to say the sole basis for the court's Rule 59 decision is incorrect. That would be a basis to reverse and then reverse the court. I have a waiver issue, though, because if there was no prohibition on the company from arguing that recording the overtime was part of the customer practice here as a condition to getting paid, then the argument might have been waived if the case wasn't litigated before the jury in that way. And I don't know if that strong message was sent in the summary judgment decision that the whole recording issue was off the table for purposes of establishing what was the custom or practice. Your Honor, when you look to the closing argument the NCR gave, it was directly tied to this recording issue. It tied it to jury instruction 16 and said the whole issue, the reason there's not a customer practice here, is because the customer practice, all of the evidence is robust that it is the policy or practice is tied to recording. That was the very theory of the case that was presented. And the district court said that that was legally irrelevant. That was the error that we focused on here that we think the court should address. Okay. Thank you. Thanks to both counsel. The case is taken under advisement.